UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

I.S., a minor by and through her mother ANAIS DISLA;
J.B., a minor by and through her parents IBELYH DISLA
and JOSE BRISTOL; I.M., a minor by and through her
mother ZULAYKA McKINSTRY; and A.S., a minor by
and through her mother CHANDERLIA SILVA;

                          Plaintiffs,

v.                                                          19-CV-0513
                                                            (GTS/ATB)
BINGHAMTON CITY SCH. DIST.;
BINGHAMTON BD. OF EDUC.;
TIM SIMONDS; MICHELLE RALEIGH; and
MARY ELLEN EGGLESTON;

                          Defendants.
_____

APPEARANCES:                              OF COUNSEL:

MORRISON & FOERSTER                       AMANDA L. GAYER, ESQ.
  Counsel for Plaintiffs                  CHANWOO PARK, ESQ.
250 West 55th Street                      JAMIE A. LEVITT, ESQ.
New York, NY 10019                        JOSHUA HILL, JR., ESQ.

NAACP LEGAL DEFENSE & EDUC. FUND, INC.    KRISTEN A. JOHNSON, ESQ.
  Co-Counsel for Plaintiffs               RACHEL KLEINMAN, ESQ.
40 Rector Street, Floor 5                 CARA McCLELLAN, ESQ.
New York, NY 10006

GOLDBERG SEGALLA                          ASHLEY K. BOISVERT, ESQ.
  Counsel for Defendants                  JOHN P. COGHLAN, ESQ.
5786 Widewaters Parkway                   SHANNON T. O'CONNOR, ESQ.
Syracuse, NY 13214

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Anais Disla as the natural

mother of the infant I.S. ("Plaintiff I.S."), Ibelyh Disla and Jose Bristol as the natural parents of

the infant J.B. ("Plaintiff J.B."), Zulayka McKinstry as the natural mother of the infant I.M. ("Plaintiff I.M."), and Chanderlia Silva as the natural mother of the infant A.S. ("Plaintiff A.S.") (collectively "Plaintiffs") against the Binghamton City School District ("the District"), three of its employees ("Defendant Simonds" "Defendant Raleigh" and "Defendant Eggleston"), and its Board of Education (collectively "Defendants"), is Defendants' motion to dismiss the fourth and fifth causes of action of Plaintiffs' Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and their motion for judgment on the pleadings with respect to the second, third, fourth, and fifth causes of action and part of the first cause of action of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 44.)  For the reasons set forth below, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied and Defendants' motion for judgment on the pleadings is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Summary of Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges as follows.  (*See generally* Dkt. No. 1 [Plfs.' Compl.].)

On January 15, 2019, at East Middle School in Binghamton, New York, four twelve-year-old girls (Plaintiffs A.S., I.S., I.M., and J.B.) were walking in the hallway from the cafeteria towards their lunch activity when they were stopped by the school's Principal, Defendant Simonds, as well as the school's Assistant Principal, Defendant Raleigh.  (*Id.*)  During the ensuing conversation, Defendant Simonds told the girls he had been looking for them and then, with Defendant Raleigh, escorted them to the health office, where Defendant Eddleston was

2

located.  (*Id.*)  At the health office, Defendants Simonds, Raleigh, and Eddleston whispered amongst themselves before Defendant Eggleston brought each individual Plaintiff into the health office for a separate closed-door, search and examination.  (*Id.*)  No Plaintiff was informed of the purpose of the search, nor were Plaintiffs' parents and/or guardians notified.  (*Id.*)  Additionally, Plaintiffs' parents and/or guardians did not provide consent prior to the search itself.  (*Id.*)

The extent of the search and examination varied with each individual Plaintiff and ranged from a variety of sobriety tests to "strip" searches of the infant Plaintiffs.  (*Id.*)  Defendant Raleigh was present for portions of the search and examination of Plaintiffs I.S., I.M., and A.S., as compared to Defendant Simonds, who stayed in the health office during the search of each individual Plaintiff.  (*Id.*)  After the searches and examinations were completed, Defendant Simonds sent Plaintiffs I.S., I.M. and A.S. back to class, and he placed Plaintiff J.B., without explanation, on in-school suspension.  (*Id.*)  Plaintiffs A.S. and J.B. returned to East Middle School on January 16, 2019, but were afraid to return to school thereafter because they each felt it was too unsafe to return; Plaintiffs I.M. and I.S. did not return to school at all for the same reason.  (*Id.*)  Each Plaintiff identifies as a racial minority while each individual Defendant is identified as Caucasian.  (*Id.*)

After the events of January 15, 2019, the School Board held a meeting on January 22, 2019, during which Plaintiffs and their parents spoke with Superintendent Tonia Thompson. (*Id.*)  Plaintiffs' parents requested Plaintiffs' immediate transfer to West Middle School, the only other middle school within the District that is not an alternative school.  (*Id.*)  Plaintiffs were instead assigned to the Columbus School, which provides alternative educational services.  (*Id.*)

3

On January 24, 2019, Plaintiffs began attending the Columbus School.  (*Id.*)  Although Plaintiffs I.S. and A.S. have individualized education plans, no accommodations were provided during their time at the Columbus School.  (*Id.*)  After a meeting with Plaintiffs' parents on February 8, 2019, Plaintiffs were transferred to West Middle School as of February 11, 2019, approximately one month after the allegedly unlawful searches and examinations.  (*Id.*)

Based on these factual allegations, Plaintiffs assert five claims against Defendants: (1) a claim for an unlawful search in violation of the Fourth Amendment against all Defendants; (2) a claim for intentional discrimination violation of the Equal Protection Clause against all Defendants; (3) a claim for intentional discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, against the District and Board of Education ("School Defendants"); (4) a claim for a violation of the Individuals with Disabilities Education Act ("IDEA") with regard to Plaintiffs I.S. and A.S. against the School Defendants; and (5) a claim for a violation of Section 504 of the Rehabilitation Act with regards to Plaintiffs I.S. and A.S. against the School Defendants.  (*Id.*)  Familiarity with the factual allegations supporting these claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

> **B.** **Parties' Briefing on Defendants' Motions**

Generally, in support of their motion to dismiss for lack of subject-matter jurisdiction and motion for judgment on the pleadings, Defendants assert the following four arguments: (1) Plaintiffs I.S. and A.S.'s fourth and fifth causes of action must be dismissed because (a) the Court lacks subject-matter jurisdiction over those causes of action in that Plaintiffs I.S. and A.S.

failed to exhaust their administrative remedies with regard to them, or (b) in the alternative, Plaintiffs I.S. and A.S. have failed to state a claim by failing to plead facts plausibly suggesting that I.S. and A.S. violated the District's code of conduct; (2) Plaintiffs first cause of action must be dismissed because (a) Plaintiffs J.B. and A.S. have not pled a Fourth Amendment violation premised on a strip search, (b) Defendant Raleigh and Defendant Simonds were not personally involved in the searches of Plaintiffs (based on Plaintiffs' factual allegations), and (c) Plaintiffs have not pled a *Monell* claim against the School Defendants in that (i) Plaintiffs have failed to identify a custom, policy, or practice that deprived students of a constitutional right, and (ii) Plaintiffs have not pled facts plausibly suggesting a failure to train the individual Defendants; (3) Plaintiffs second cause of action must be dismissed due to their failure to state a claim for intentional discrimination under the Equal Protection Clause and Title VI because (a) Plaintiffs have failed to plead facts plausibly suggesting purposeful discrimination and discriminatory intent, and (b) the statistics cited by Plaintiffs are irrelevant because the data is three to four years old, and refers to overall student discipline, not searches of individual students; and (4) Plaintiffs' official capacity claims against the individual Defendants must be dismissed because they are duplicative of Plaintiffs' claims against the School Defendants.  (*See generally* Dkt. No. 44-1 [Defs.' Memo. of Law].)  For these reasons, Defendants ask the Court to dismiss Plaintiffs' first (in part), second, third, fourth, and fifth claims with prejudice.  (*See generally id.*)

Generally, in opposition to Defendants' motion, Plaintiffs assert the following six arguments: (1) Plaintiffs have pled facts plausibly suggesting that Defendants unlawfully searched each individual Plaintiff in violation of the Fourth Amendment, and that Defendants

Simonds and Raleigh directly participated in the searches; (2) Plaintiffs have sufficiently pled municipal liability claims against the School Defendants based on both a final-policymaker theory, and a failure-to-train-or-supervise theory; (3) Plaintiffs' official capacity claims against the individual Defendants are not duplicative of their claims against the School Defendants because Plaintiffs seek prospective injunctive relief against the Individual Defendants in their official capacity; (4) Plaintiffs have pled facts plausibly suggesting an inference of intentional discrimination in violation of the Equal Protection Clause and Title VI because they have alleged that the conduct before and during the searches was motivated, at least in part, by discriminatory bias; (5) Plaintiffs have sufficiently pled IDEA and Section 504 claims because the procedural protections relating to a change in school placement under the IDEA and Section 504 were not met with respect to Plaintiffs A.S. and I.S.; and (6) the Court has subject-matter jurisdiction over Plaintiffs' fourth and fifth causes of action because Plaintiffs I.S. and A.S. challenge a systemic violation for which exhaustion would be futile, and Plaintiffs I.S. and A.S. seek a remedy that no Administrative Officer could provide.  (*See generally* Dkt. No. 60 [Plfs.' Opp'n Memo. of Law].)

Generally, in their reply, Defendants repeat their original arguments, and clarify their position with regard to Plaintiffs' first cause of action as follows: (1) Plaintiff A.S. and J.B. fail to state a Fourth Amendment claim premised on a strip search against Defendant Eggleston because (based on Plaintiffs' own factual allegations) Plaintiffs A.S. and J.B. were not actually strip searched; (2) Plaintiffs' Fourth Amendment claims against Defendant Raleigh premised on a strip search must be dismissed because Defendant Raleigh was not personally involved in the

strip search, and Defendant Raleigh did not personally participate in the alleged search of J.B.;

and (3) Plaintiffs' Complaint is devoid of any allegations that create an inference plausibly

suggesting that Defendant Simonds was personally involved in the alleged unlawful searches.

(*See generally* Dkt. No. 62 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen*

*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be

properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory authority to adjudicate it.  *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when

resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.

The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the

evidence.  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court

evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be

resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys.,*

*Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### B.     Legal Standard Governing Motions for Judgment on the Pleadings

"After the pleadings are closed . . . a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)

is governed by the same standard governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

8

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]	*See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint . . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72

**III.    ANALYSIS**

**A.    Whether Plaintiffs' Fourth and Fifth Causes of Action Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.  (Dkt. No. 60.)

Because Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(c), the Court must first assess whether it has subject-matter jurisdiction over the claims challenged in Plaintiffs' Complaint.  *See Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012) ("When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action.").

**1.    Whether the Court Has Subject-Matter Jurisdiction over Plaintiffs' Fourth and Fifth Causes of Action**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 60, at 27-31.)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Plaintiffs' reasoning.

---

(2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

The IDEA allows a party to present a complaint with respect to "any mater relating to the identification, evaluation, or educational placement of the child."  20 U.S.C. § 1415(b)(6)(A). "It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court."  *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 112 (2d Cir. 2004).  "[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)."  *Polera v. Bd. of Educ. of Newburgh,* 288 F.3d 478, 481 (2d Cir. 2002); 20 U.S.C. § 1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. § 1415] subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

If a plaintiff has failed to meet the exhaustion requirement, the district court does not have subject-matter jurisdiction over the action.  *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 245 (2d Cir. 2008) (citing *Polera,* 288 F.3d at 483 and *Hope v. Cortines,* 69 F.3d 687, 688 [2d Cir. 1995]).  However, exhaustion may be excused if it would have been futile.  *Polera,* 288 F.3d at 488.  "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."  *Coleman v. Newburgh Enlarged City Sch. Dist.,*

13

503 F.3d 198, 205 (2d Cir. 2007) (internal quotation marks omitted).  "The potential bases for futility are: (1) that defendants 'failed to implement services that were specified or otherwise clearly stated in an [Individualized Education Program ("IEP")],' . . . , or (2) that the problems alleged are 'systemic violations' that cannot be addressed by the available administrative procedures."  *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010) (internal citation omitted) (collecting cases).  When challenging a district-wide policy, a party's claims fall within the systemic-violations futility exception.  *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 157 n.3 (2d Cir. 2016).

If a plaintiff can demonstrate that there is no relief available to her through the administrative process, then exhaustion is futile.  *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 790 (2d Cir. 2002).  "Relief available" is defined as "relief for the events, conditions, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers."  *Taylor,* 313 F.3d at 790 (quoting *Polera,* 288 F.3d at 488).  Pursuant to this rule, a plaintiff cannot avoid the exhaustion requirement by merely adding a request for money damages, which are unavailable under the IDEA.  *Polera,* 288 F.3d at 488-91.  In such a case, an "adequate remedy" is still available through the administrative process, even if such a remedy is not the same remedy sought in the complaint. *Id.* at 490.

In this case, there is no dispute that Plaintiffs did not exhaust the administrative remedies that were available to them and that are required by the IDEA.  As explained above, generally, Plaintiffs argue that exhaustion should be excused as futile because they challenge a district-wide policy and seek a remedy that an Administrative Officer could not provide.

Although Defendants argue that the IDEA provides sufficient administrative remedies to protect Plaintiffs' interests, the Court respectfully disagrees.  Defendants' proposed administrative remedies concern Plaintiffs I.S. and A.S.'s placement in the Columbus Alternative School (Dkt. No. 44-1, at 16-19; Dkt. No. 62, at 6-8).  Meanwhile, Plaintiffs' Complaint clearly states they are not challenging the School Defendants' classification and placement of Plaintiffs I.S. and A.S. at the Columbus Alternative School, but are instead challenging the School Defendants' alleged policy of referring students to an Alternative School (a disciplinary sanction) without conducting a Manifestation Determination Review ("MDR") or re-evaluation, in violation of the IDEA and Section 504.  (Dkt. No. 60, at 30-31; Dkt. No. 1, at ¶¶ 73, 166, 175.)  "Thus, the focus on the case will be on [the School Defendants'] alleged policy, not whether a particular IEP is appropriate for a particular student."  *Kalliope*, 827 F. Supp. 2d at 139.

Moreover, the framework and procedures for assessing and placing students in appropriate educational programs are at issue.  Although Plaintiffs' do not provide the Court with the School Defendants' policy that requires non-disciplinary Alternative School referrals, the Court is cognizant of its obligations under Fed. R. Civ. P. 8(e) to liberally construe all pleadings, and its obligations under Fed. R. Civ. P. 12(b)(6) to draw all reasonable inferences in favor of the non-moving party.  Specifically, Plaintiffs' Complaint alleges that on January 22, 2019, Plaintiffs and the mothers in attendance at the School Board meeting met with Superintendent Thompson and requested immediate transfer to West Middle School.  (Dkt. No. 1 at ¶ 73.)  Instead, Plaintiffs were assigned to the Columbus Alternative School.  (*Id.*)  Given the

15

alleged public nature of these events, it is reasonable to infer that the School Defendants adhered

to the District's policy when assigning Plaintiffs to the Columbus Alternative School.  Because

Plaintiffs challenge a district-wide policy, their claims fall under the IDEA's futility exception.

For all of these reasons, Defendant's motion to dismiss for lack of subject-matter

jurisdiction is denied.

### 2.    Whether Plaintiffs' Fourth and Fifth Causes of Action Fail to State a Claim Upon Which Relief Can Be Granted

After carefully considering the matter, the Court answers the question in the affirmative

for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 44-1; Dkt. No. 62.)  To those

reasons, the Court adds the following analysis, which (again) is intended to supplement, and not

supplant, Defendants' reasoning.

### a.    IDEA Cause of Action

"In determining whether a State has deprived children of free and appropriate education

mandated by [the] IDEA, courts examine whether the State has complied with [the] IDEA's

procedural and substantive requirements."  *Kalliope*, 827 F. Supp. 2d at 140 (*citing Grim v.

Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 [2d Cir. 2003]).  "The IDEA requires that states

offer parents of a disabled student an array of procedural safeguards designed to help ensure the

education of their child."  *Polera*, 288 F.3d at 482.  "If these requirements are met, the State has

complied with the obligations imposed by Congress and the courts can require no more."  *Bd. of

Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982).

"School personnel may consider any unique circumstances on a case-by-case basis when

determining whether to order a change in placement for a child with a disability who violates a

16

code of student conduct."  20 U.S.C. § 1415(k)(1)(a).  When changing the placement of a child

with a disability for a violation of the code of student conduct, there must be a manifestation

determination within 10 school days of the decision.  34 C.F.R. 300.530(e).

In this case, Plaintiffs A.S. and I.S. argue that, although they have not violated a student

code of conduct, the IDEA provides procedural protections for students with disabilities subject

to a change of placement in general.  (Dkt. No. 60, at 26.)  However, the text of the IDEA clearly

indicates that the enumerated procedural protections for placements of students in alternative

educational settings concerns students with a disability *who violate the code of student conduct*.[2]

20 U.S.C. § 1415(k)(1)(a).  Plaintiffs A.S. and I.S. do not cite to specific facts or statistics in

support of their position that the IDEA applies to non-disciplinary actions.  Instead, they

conclusorily allege that any policy or practice of assigning students to an alternative school

constitutes a disciplinary action, despite the absence of a disciplinary referral.  (Dkt. No. 1 at ¶

164.)  The School Defendants' Code of Conduct identifies an alternative school placement as

one of the several options to handle the individualized intervention of students.  Binghamton

City School District Code of Conduct, 47 (2018) http://www.binghamtonschools.org/UserFiles/

Servers/Server_512723/Image/For%20Students/Code%20of%20Conduct/BCSD_Code_of_Cond

uct_8-16-18_-_updated%20-%20FOR%20PRINT.pdf. (last visited Aug. 11, 2020).  The Code of

Conduct further classifies the alternative placement as an "intervention."  *Id.*  This word choice

---

[2]       In this case, Plaintiffs have not alleged that the School Defendants failed to provide
written notice prior to changing Plaintiffs A.S. and I.S.'s educational placement to the Columbus
Alternative School.  (Dkt. No. 1, at ¶ 77.)  Because Plaintiffs A.S. and I.S. make no reference to
receiving prior written notice, the Court does not rely on 20 U.S.C. § 1415(b)(3) for its analysis.

suggests that a student who is placed in an Alternative School violated the School Defendants'

Code of Conduct, and that the transfer is a method intended to stop the student from committing

further violations at the expense of the student's peers' education.  In the absence of allegations

that Plaintiffs A.S. and I.S. were improperly disciplined for a behavior caused by their disability,

they cannot state a claim under the IDEA.

     A few words are appropriate regarding the nature of the dismissal in this action.  As the

Second Circuit has explained, "Where it appears that granting leave to amend is unlikely to be

productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer*

*& Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).[3]  "[A]n opportunity to amend is not

---

[3]    *Accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").  The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate reflection of the leave to amend guidelines under the current "plausibility standard."  *Aschfroft v. Iqbal*, 556 U.S. 662 (2009).

required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile." *Sorrentino v. Barr Labs. Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (May 20, 2010 N.D.N.Y.) (Suddaby, C.J.).  Here, the Court finds that (particularly given the breadth and detail of Plaintiffs' Complaint, which was crafted with the assistance of counsel, is forty-one pages in length and has fifty pages of attachments) the above-described defects in Plaintiffs' Complaint are substantive in nature, such that better pleading would not cure them.

Accordingly, for the reasons stated above, Plaintiffs A.S. and I.S.'s IDEA claim against the School Defendants is dismissed with prejudice for failure to state a claim.

### b.      Rehabilitation Act Cause of Action

To prove a Section 504 violation of the Rehabilitation Act, "a plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified for benefits under a federally funded program; and (3) he has been denied those benefits because of his disability." *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 289 (S.D.N.Y. 2007) (collecting cases).  The Supreme Court has determined that the phrase "because of" requires a plaintiff to show, and eventually prove, but-for causation.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (collecting cases).  It follows then that, under Section 504 of the Rehabilitation Act, a plaintiff must show but-for causation when arguing that the reason for the denial of benefits was based on the plaintiff's disability. *Nassar*, 570 U.S. at 350 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63-64, and n.14 [2007]).

Because Section 504 addresses discrimination against disabled students, a plaintiff must show that a school district acted with bad faith or gross misjudgment to show a Section 504 violation, not a mere violation of the IDEA.  *Warren*, 528 F. Supp. 2d at 289 (citing *Scaggs v. N.Y. State Dep't of Educ.*, 06-CV-0799, 2007 WL 1456221, at *8, 15 [E.D.N.Y. May 16, 2007]). "[I]ntentional discrimination may be inferred when a school district acts with gross negligence or reckless indifference in depriving a child of access to a [free and public education]."  *Rutherford v. Fl. Union Free Sch. Dist.*, 16-CV-9778, 2019 WL 1437823, at *34 (S.D.N.Y. Mar. 29, 2019).

Here, Plaintiffs A.S. and I.S. have pled facts plausibly suggesting that they are individuals with disabilities and that they qualify for benefits under a federally funded program. (*See generally* Dkt. No. 1.)  Under the implementing regulations of Section 504, a school district must conduct a re-evaluation prior to any "significant change in placement."  34 C.F.R. § 104.35(a).  In determining what constitutes a "significant" change, the statute and regulations provide the Court some guidance.  Specifically, the state of New York permits a superintendent of schools to place a student with a disability into an interim alternative educational setting for up to ten consecutive school days.  8 NY ADC 201.7(c).  The IDEA also differentiates between the authority of school personnel at the ten school-day juncture.  20 U.S.C. § 1415(k)(1)(B)-(C). Accordingly, the Court finds that a change in placement of more than ten school-days is considered significant under Section 504 of the Rehabilitation Act.

The Court next turns to whether Plaintiffs A.S. and I.S. were denied a benefit because of their disabilities.  Because Plaintiffs A.S. and I.S. have sufficiently alleged that a placement of more than ten-school days is a significant change in their placement, the Court finds that the re-

evaluation to which Plaintiffs A.S. and I.S. were entitled amounts to a benefit for Section 504 purposes.  However, Plaintiffs A.S. and I.S. have failed to plead facts plausibly suggesting that the School Defendants denied the re-evaluation because of their disabilities.  Plaintiffs' Complaint clearly alleges that the School Defendants placed Plaintiffs in the Columbus Alternative School because of their fear and emotional distress experienced at East Middle School, not because of Plaintiffs' A.S. and I.S.'s disabilities.  (Dkt. No. 1 at ¶¶ 83-88.) Plaintiffs' fear and emotion distress, however warranted, cannot satisfy the but-for causation required under the Rehabilitation Act. Therefore, Plaintiffs' Complaint fails to allege facts plausibly suggesting that the School Defendants violated Section 504 of the Rehabilitation Act.

Moreover, the Court finds that the above-described defects in Plaintiffs' Complaint are substantive in nature, such that better pleading would not cure them.  For all of these reasons, the Court finds that Plaintiffs' Section 504 claims against the School Defendants are dismissed with prejudice for failure to state a claim.

Accordingly, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied, and Defendants' motion for judgment on the pleadings is granted with respect to Plaintiffs A.S. and I.S.'s IDEA and Rehabilitation Act causes of action.

### B.    Whether Plaintiffs' A.S. and J.B.'s Fourth Amendment Claims Based on a Strip Search Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative in part, and in the negative in part for some of the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 60, at 27-31.)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Plaintiffs' reasoning.

21

"The [Fourth] Amendment protects the people from unreasonable searches and seizures of their persons, houses, papers, and effects." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 62 (1992) (noting that "the Amendment protects property as well as privacy") (internal quotation marks and citation omitted).  A search is defined as "[a]n examination of a person's body, property, or other area that the person would reasonably be expected to consider as private . . . ." *Search*, Black's Legal Dictionary (10th ed. 2014).  In *New Jersey v. T.L.O.*, the Supreme Court articulated a two-part test to determine the reasonableness of a student search.  469 U.S. 325, 341-42 (1985); *see also Sodal*, 506 U.S. at 71 ("[R]easonableness is still the ultimate standard under the Fourth Amendment.").  "First, the search must be 'justified at its inception.'" *Phaneuf v. Fraikin*, 448 F.3d 591, 596 (2d Cir. 2006) (quoting *T.L.O.*, 469 U.S. at 341).  "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42 (footnote omitted).  "[A] search is warranted only if the student's conduct creates a reasonable suspicion that a particular regulation or law has been violated, with the search serving to produce evidence of that violation." *Phaneuf*, 448 F.3d at 596 (quoting *Cornfield by Lewis v. Consol. High Sch. Dist.*, 991 F.2d 1316, 1320-21 [2d Cir. 1993]).  Courts must base their findings "on only those facts known to the school officials *prior* to the search." *Id.* at 597 (emphasis in original).

The search "must [also] be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 596 (quoting *T.L.O.*, 469 U.S. at 341).  A

search "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342 (footnote omitted). "[A]s the intrusiveness of the search of a student intensifies, so too does the standard of Fourth Amendment reasonableness." *Phaneuf*, 448 F.3d at 597 (quoting *Cornfield*, 991 F.2d at 1321).

### 1.     Plaintiffs A.S. and J.B.

In this case, the School Defendants' own policy defines a "strip search" as follows: "a search that requires the student to remove any or all of his/her clothing, other than an outer coat or jacket." (Dkt. No. 1 at ⁋ 89) (quoting Searches and Interrogations of Students, Binghamton City School District Policy No. 7330 (2018), http://bcsd1.ss14.sharpschool.com/UserFiles/Servers/Server_512723/File/Board%20Policies/Section%207000%20Students%20updated%20february%202018.pdf; *see also Strip Search*, Black's Legal Dictionary (10th ed. 2014) (defining a strip search as "[a] search of a suspect whose clothes have been removed, the purpose [usually] being to find any contraband the person might be hiding.") The school policy further states that "[s]trip searches are intrusive in nature and are almost never justified," unless there are exigent circumstances where "school officials have *highly credible evidence* that such a search would prevent danger or yield [such] evidence." *Id.* (emphasis added). "The requirement of reasonable suspicion is not a requirement of absolute certainty but only of sufficient probability." *Phaneuf*, 448 F.3d at 596.

The Supreme Court has articulated that a strip search is so invasive that it violates both a subjective and objective expectation of privacy in our society. *See Safford Unified Sch. Dist. No.*

*1 v. Redding*, 557 U.S. 364, 374-75 (2009) ("[The student's] subjective expectation of privacy against such a search is inherent in her account of it as embarrassing, frightening, and humiliating.  The reasonableness of her expectation (required by the Fourth Amendment Standard) is indicated by the consistent experiences of other young people similarly searched, whose adolescent vulnerability intensifies the patent intrusiveness of the exposure.").

Here, Defendants argue that Plaintiffs A.S. and J.B. were not strip searched because (with the exception of their shoes) both Plaintiffs refused to remove articles of clothing when asked by Defendant Eggleston and the School Defendants' policy clearly does not apply to a student's shoes.  (Dkt. No. 44-1 at 23; Dkt. No. 62 at 9.)  Of course, contrary to Defendants' position, shoes or other footwear are not plainly excepted from the District's definition of a "strip search."  As stated above, the School Defendants' policy plainly states that a "strip search is a search that requires a student to remove any or all of his/her clothing, *other than* an outer coat or jacket."  Searches and Interrogations of Students, Binghamton City School District Policy No. 7330 (2018), http://bcsd1.ss14.sharpschool.com/UserFiles/Servers/Server_512723/File/Board%20 Policies /Section%207000%20Students%20updated%20february%202018.pdf (emphasis added).  Moreover, what constitutes a strip search for the purposes of the Fourth Amendment is universal.  *See Marriott v. Cty. of Montgomery*, 227 F.R.D. 159, 169 (N.D.N.Y. 2005) (Hurd, J.) (defining a strip search as "[a] search of a suspect whose clothes have been removed" in a jail policy setting).  Accordingly, the Court must decide whether footwear is considered "clothing" for the purposes of a Fourth Amendment strip search.

The Second Circuit has determined that the removal of a person's shoes does not amount to a strip search under the Fourth Amendment. *See*, *e.g.*, *United States v. Nieves*, 609 F.2d 642, 646 (2d Cir.1979) (holding that the removal of a person's shoes during a routine border search was not a strip-search), *accord*, *United States v. Grotke*, 702 F.2d 49, 51-52 (2d Cir. 1983); *Lamore v. Vermont*, 12-CV-0059, 2013 WL 3560969, at *3-4 (D. Vt. July 11, 2013); *cf. Lopez v. City of New York*, 901 F. Supp. 684, 692 (S.D.N.Y. 1995) ("A search at the police facility (not a 'strip' search) includes the removal of outer garments such as . . . shoes and socks . . . .'"") (internal quotation marks omitted). Finding that "the search of [a person's] shoes is 'minimally intrusive,'" *Grotke*, 702 F.2d at 52, the Second Circuit reasoned that "the relative degree of embarrassment or indignity that a person is likely to suffer as a result of" removing one's shoes is not so invasive to amount to a strip search. *Nieves*, 609 F.2d at 646. Although the Court is cognizant of its obligations under Fed. R. Civ. P. 8(e) to liberally construe all pleadings, Plaintiffs A.S. and J.B. have failed to plead facts plausibly suggesting that they were subject to a strip search without reasonable suspicion. Moreover, Plaintiffs have failed to provide the Court with any authority to suggest that the mere request to remove one's article of clothing amounts to a strip search under the Fourth Amendment. Because both Plaintiffs A.S. and J.B. refused to abide by Defendant Eggleston's request to remove their clothing as part of a search (Dkt. No. 1 at ¶¶ 20-22, 43-44), and Defendant Eggleston did not strip search Plaintiffs' in spite of their refusal, Plaintiffs' Complaint fails to plead facts plausibly alleging that Plaintiffs A.S. and J.B. were subject to a strip search without reasonable suspicion, in violation of the Fourth Amendment.

Additionally, given the breadth and detail of Plaintiffs' Complaint (which was crafted with the assistance of counsel, is forty-one pages in length and has fifty pages of attachments), the Court finds that the above-described defects in Plaintiffs' Complaint are substantive in nature, such that better pleading would not cure them.  For these reasons, the Court finds that Defendants' motion to dismiss Plaintiffs A.S. and J.B.'s Fourth Amendment claims premised on a strip search with respect to all Defendants is granted; however, the Court notes that this dismissal pertains only to Plaintiffs A.S. and J.B. allegations of a strip search, not their allegations of a search in violation of the Fourth Amendment.

### 2.      Defendants Simonds and Raleigh

Next, the Court must determine whether Plaintiffs pled facts plausibly suggesting that Defendants Simonds and Raleigh directly participated in the searches of each individual Plaintiff.  The Second Circuit has defined a "direct participant" as a person who "authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 155 [2d Cir. 2001]).  As a basis of liability, "direct participation" "requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost*, 262 F.3d at 155 (footnote omitted). "Personal involvement may be established by showing that the defendant directly participated in the acts causing the constitutional deprivation, or by demonstrating a form of supervisory liability." *Barmore v. Aidala*, 419 F. Supp. 2d 193, 200 (N.D.N.Y. 2005) (McAvoy, J.) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254-55 [2d Cir. 2001]).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, Defendant Simonds first confronted Plaintiffs in the hallway and escorted them to the nurse's office.  Plaintiffs allege that, before being searched and examined, they witnessed Defendant Simonds, Defendant Raleigh, and Defendant Eggleston whispering to each other in the main area of the nurse's office immediately before Defendant Eggleston started searching Plaintiffs.  (Dkt. No. 1 at ¶¶ 17-19.)  Defendant Simonds was also present in the nurse's office for an extended period of time when Plaintiffs were subject to the individualized searches in the exam room.  (*Id.* at ¶ 17.)  As Principal of East Middle School, Defendant Simonds maintained a supervisory role at the time of the searches of Plaintiffs.  *See Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 268 (N.D.N.Y. 2000) (Hurd, J.) (finding that a school principal is the highest-ranking person at the school and is directly responsible for discipline).  These factual allegations, combined with Defendant Simonds' supervisory role, create a reasonable inference that Defendant Eggleston was acting on Defendant Simonds' behalf as Principal of East Middle School during the time in question.  Because Plaintiffs argue that Defendants violated their constitutional rights, Plaintiffs have plausibly suggested that Defendant

Simonds' conduct amounts to supervisory liability through either direct participation or gross negligence in supervision.

With respect to Defendant Raleigh, not only was she in the nurse's office while Plaintiffs were being searched, she also participated in the individual searches of Plaintiffs A.S., I.S., and I.M. when she ordered Plaintiffs to empty their pockets and take off their shoes, and when she searched their personal belongings.[4]  (Dkt. No. 1 at ¶¶ 17, 22-23, 32-33, 38, 50.)  However, Defendant Raleigh did not physically participate in the strip searches of Plaintiffs I.S. and I.M. because Plaintiffs failed to plead facts suggesting that she was in the exam room when Plaintiffs were removing their sweatshirts, pants, or shirts.  (*Id.*)  Despite the lack of physical participation in the strip searches at issue, like Defendant Simonds, Plaintiffs witnessed Defendant Raleigh participate in a meeting with Defendant Eggleston immediately before the individualized searches of Plaintiffs began.  These factual allegations, coupled with Defendant Raleigh's alleged supervisory role as Assistant Principal, plausibly suggest that Defendant Raleigh was grossly negligent in the supervision of, or directly participated in, the alleged strip searches of Plaintiffs I.M, and I.S.

For all of these reasons, the Court finds that Plaintiffs have pled facts plausibly suggesting that Defendants Simonds and Raleigh directly participated in the searches of each Plaintiff, and Plaintiffs' first cause of action survives against Defendants Simonds and Raleigh.

---

[4]     Plaintiffs' Complaint contains no factual allegations plausibly suggesting that Defendant Raleigh was either present in the exam room or ordered Plaintiff J.B. to remove her shoes.  (Dkt. No. 1 at ¶¶ 40-47.)

### 3.     Municipal Liability

To establish municipal liability based on the acts of a public official under 42 U.S.C. § 1983, Plaintiff must show that (1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality caused the constitutional injury.  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 [1978]). A plaintiff can show that an official policy of the municipality caused the constitutional injury by pleading the following:

> "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 637 (S.D.N.Y. 2015) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 [S.D.N.Y. 2010]).

The Court notes that "*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."  *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).  Rather, to establish municipal liability a plaintiff must demonstrate that (1) she "suffered a tort in violation of federal law committed by the municipal actors," and (2) "that their commission of

the tort resulted from a custom or policy of the municipality." *Askins*, 727 F.3d at 253 (citing *Monell*, 436 U.S. at 690-91).

### a.      Final Policy-Maker Theory

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (footnote omitted).  "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bd. of Cty. Com'rs of Bryn Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).  Section 1983 plaintiffs may establish that a municipality is "liable [by] proving that 'the authorized policymakers approve[d] a subordinate's decision and the basis for it.'"  *Amnesty America v. Town of West Hartford*, 361 F.33d 113, 126 (2d Cir. 2004) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 [1988] [plurality opinion]).

"Whether the principal or assistant principal generally has final policy making authority is not the inquiry; 'rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit.'" *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 311 (E.D.N.Y. 2016) (quoting *City of Waterbury*, 542 F.3d at 37).  Stated another way, "municipal liability under [Section] 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-84.   The question of

whether "an official has final policymaking authority is a legal question, determined on the basis of state law." *City of Waterbury*, 542 F.3d at 37. "District Courts in the Second Circuit have found that a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control." *Zambrano-Lamhauni v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011) (collecting cases).

In this case, Defendants argue that the School Defendants' code of conduct requires the Court to dismiss Plaintiffs' *Monell* claims under the final policymaker theory. However, in New York State, the "principal shall be the administrative and instructional leader of the school." N.Y. Educ. § 2590-i(1). Contrary to Defendants' argument, which relies entirely on the interpretation of the School Defendants' code of conduct, New York State law clearly outlines a principal's role as the final policymaker of the school when the ultimate harm was under the principal's control. Here, Defendants' search is the ultimate harm that befell Plaintiffs. Defendant Simonds also stopped Plaintiffs in the hallway, escorted them to the nurse's office, allegedly conferred with Defendant Raleigh and Defendant Eggleston immediately before the searches began, stayed in the nurse's office for an unknown period of time after the searches began, and ultimately imposed disciplinary action on Plaintiff J.B. Furthermore, as discussed more in depth above in Part III.B.2. of this Decision and Order, Plaintiffs have pled facts plausibly suggesting Defendant Simonds' direct participation in the searches of Plaintiffs. Because Plaintiffs have pled facts plausibly suggesting that Defendant Simonds had control of

the extent of the ultimate harm that befell them, the Court finds that Plaintiffs' have plausibly alleged municipal liability at this stage in the action.[5]

For all of these reasons, the School Defendants' motion to dismiss for failure to state a claim based on a final policymaker theory is denied.

### b.      Failure-to-Train Theory

"*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  To show *Monell* liability under a failure-to-train theory, a plaintiff must plead the following: (1) the "policymaker knows 'to a moral certainty' that [the municipality's] employees will confront a given situation," (2) the "situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) the "wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights."  *Felix v. City of New York*, 344 F. Supp. 3d 644, 659 (S.D.N.Y. 2018) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 [2d Cir. 2007]).

---

[5]      The Court does not reach the issue of whether Defendant Raleigh, in her capacity as Assistant Principal, is also a final policymaker surrounding the Fourth Amendment issues in this case because Plaintiffs have already pled facts plausibly suggesting that the School Defendants are subject to municipal liability in this action.

"In order for municipal nonfeasance—e.g., the failure to train, to supervise, or to discipline—to give rise to *Monell* liability, the alleged municipal failure must 'amount[] to deliberate indifference to the rights of person with whom the [municipal employees] come into contact.'" *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 340 (N.D.N.Y. 2014) (Mordue, J.) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 [1989]). "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). "The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *see also Benacquista v. Spratt*, 217 F. Supp. 3d 588, 600-01 (N.D.N.Y. 2016) (Hurd, J.) ("To establish deliberate indifference[,] a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."). "A training program must be quite deficient in order for the deliberate indifference standard to be met; the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). "The alleged inadequacy 'must reflect a deliberate choice among various alternatives, rather than negligence or bureaucratic inaction.'" *Felix*, 344 F. Supp. 3d at 660 (quoting *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 393 [S.D.N.Y. 2013]).

A "complaint must also allege that 'the need for more or better supervision . . . was obvious,' but that the defendant 'made no meaningful attempt' to prevent the constitutional

violation." *Missel v. Cty of Monroe*, 351 F. App'x 543, 546 (2d Cir. 2009) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 [2d Cir. 2004 [Sotomayor, J.]).  "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."  *Connick*, 563 U.S. at 68.  To show deliberate indifference, a plaintiff must allege facts plausibly suggesting that the defendant was on notice that, "absent additional specified training, it was 'highly predictable' that [the defendant] would be confounded by those gray areas and make incorrect [] decisions as a result."  *Id.* at 71.  A plaintiff must show that the harm was so predictable that failing to train the defendants amounted to a "*conscious disregard* for defendants' [Constitutional] rights."  *Id.* (emphasis in original).

In this case, the "given situation" that the School Defendants' employees confront is the search of its students.  As discussed above in Part III.B.1. of this Decision and Order, courts have provided significant guidance on what amounts to a reasonable search of students, and what is required of the individuals who conduct these searches.  Here, the School Defendants implemented a policy outlining the guidelines and factors to be considered before subjecting a student to a search or interrogation.  Searches and Interrogations of Students, Binghamton City School District Policy No. 7330 (2018), http://bcsd1.ss14.sharpschool.com/UserFiles/Servers/ Server_512723/File/Board%20Policies/Section%207000%20Students%20updated%20february %202018.pdf. (last visited Aug. 11, 2020).  By specifically outlining a policy, procedure, and guidelines for searching students pursuant to the Fourth Amendment, it is reasonable to infer that the School Defendants knew "to a moral certainty" that its employees would confront a situation where they would conduct a Fourth Amendment search a student.

Plaintiffs have also pled facts plausibly suggesting that the search of Plaintiffs presented the School Defendants' employees with a difficult choice, a choice of the sort that training or supervision would make less difficult.  It is reasonable to infer that providing additional training to those individuals most likely to carry out the search would make the decision-making of what constitutes a reasonable search less difficult.  Training the employees of the School Defendants as to the parameters of a reasonable search, as well as what factors to consider when deciding to search a student, would provide those individuals carrying out a search with a deeper understanding of the constitutional boundaries.  Accordingly, Plaintiffs have met the second failure-to-train prong.

Moreover, it is self-evident how the "wrong choice" by a School Defendants' employee will frequently cause the deprivation of a student's constitutional rights.  Specifically, by subjecting these students to unreasonable searches, the School Defendants' employees would be depriving these students of their Fourth Amendment rights.  Therefore, Plaintiffs have met the third failure-to-train prong.

The Court next turns to whether the School Defendants' inaction amounted to deliberate indifference.  Here, the School Defendants implemented a district-wide policy, which was in place for at least two and a half years prior to the January 15, 2019, search of Plaintiffs. Plaintiffs have not alleged that school officials violated other students' Fourth Amendment rights, or that any of the individual Defendants had a history of violating other students' Fourth Amendment rights that was ignored by the School Defendants.  Considering the stringent "deliberate indifference" standard, Plaintiffs have not pled facts plausibly suggesting that the

School Defendants acted with a conscious disregard to Plaintiffs' Fourth Amendment rights.  By having a policy in place, and Plaintiffs' failure to plead a history of such Fourth Amendment violations by school officials, Plaintiffs have not shown that the School Defendants acted with deliberate indifference.  Accordingly, Plaintiffs' claim of *Monell* liability through a failure-to-train theory is denied.

For all of these reasons, Plaintiffs A.S. and J.B.'s causes of action based on a strip search are dismissed with respect to all Defendants, Defendant Simonds and Defendant Raleigh are found to have directly participated in the searches of each Plaintiff, and Plaintiffs have plausibly suggested municipal liability against the School Defendants through a final policymaker theory only.

### C.   Whether Plaintiffs' Intentional Discrimination Claims Should Be Dismissed for Failure to State a Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 44-1; Dkt. No. 62.)

### 1.   Plaintiffs' Equal Protection Claims

Generally, to maintain an equal protection claim, a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks and citation omitted).  "The plaintiff's and comparator's circumstances must bear a 'reasonably close

resemblance,' but need not be 'identical.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 [2d Cir. 2000]).

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him [or her] on the basis of his [or her] race." *Brown*, 221 F.3d at 337; *see also Jean v. Cty. of Nassau*, 14-CV-1322, 2020 WL 1244786, at *12 (E.D.N.Y. Mar. 16, 2020) ("Discriminatory intent requires [a plaintiff to show] that 'a discriminatory purpose has been a motivating factor' in the challenged action.") (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 [1977]). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker[s] . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group. *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 [1979]).

"At the motion to dismiss phase . . . Plaintiffs needs only provide well-pleaded factual allegations, not evidence, of [the defendant's] discriminatory actions and intent." *Burhans v. Lopez*, 24 F. Supp. 3d 375, 384 (S.D.N.Y. 2014).  A plaintiff must also show that the alleged disparity in treatment cannot survive the appropriate level of scrutiny. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  A "strict scrutiny analysis . . . addresses the question of whether people of different races are similarly situated with regard to the law or policy at issue." *Brown*, 221 F.3d at 337.

Statistical proof, "together with other evidence can prove discriminatory intent and establish a *prima facie* case." *Santiago v. Miles*, 774 F. Supp. 775, 798 (W.D.N.Y. 1991) (emphasis in original).  The Second Circuit has clearly stated that, in certain circumstances, "statistics alone may be sufficient" to create a plausible inference of discriminatory intent under the Equal Protection Clause. *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (collecting cases).  "The 'significance' or 'substantiality' of any numerical disparities must be evaluated in light of the facts of each particular case." *Santiago*, 774 F. Supp. at 799 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-95 [1988]).  To establish a plausible inference, "statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Watson*, 487 U.S. at 995.  "Federal cases have recognized that statistical differences greater than two or three standard deviations provide an acceptable basis to infer discrimination. *Santiago*, 774 F. Supp. At 799 (collecting cases).  Statistics' "usefulness depends on all of the surrounding facts and circumstances*." Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977).

In this case, Plaintiffs claim an Equal Protection violation based on Defendants' decision to search Plaintiffs, citing to disciplinary data and studies in support of their argument.  (*See generally* Dkt. No. 1 at ⁋⁋ 92-102.)  However, most of the information cited by Plaintiffs predates the incident of January 15, 2019, by three to four years.  Although the statistics from prior school years can be relevant, the statistics provided by Plaintiffs concern disciplinary actions in general; Plaintiffs provide no statistics highlighting the disparate treatment of search rates, or searches themselves, among students of different races throughout the District.  Because

Plaintiffs do not identify relevant statistics concerning searches within the District, Plaintiffs have not compared their circumstances with a similarly situated group of students. Accordingly, the Court does not consider Plaintiffs' statistical information in its Equal Protection analysis.

### a.   Individual Defendants

In this case, Plaintiffs argue that Defendant Simonds' characterization of Plaintiffs' behavior amounted to an Equal Protection violation because it is "evident" that Plaintiffs' race or ethnicity was a motivating factor when Defendant Simonds' determined that Plaintiffs' "hyper and giddy" behavior required Plaintiffs to be strip searched. (Dkt. No. 1 at ¶¶ 142.) Although the Court "must accept as true all of the factual allegations contained in the complaint," it need not accept Plaintiffs' conclusory allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Here, Plaintiffs claim that Defendant Simonds confronted Plaintiffs in the hallway during the lunch hour, and after a brief conversation, escorted Plaintiffs to the nurse's office because they were acting unusually "hyper and giddy." (Dkt. No. 1 at ¶¶ 57, 65.) Despite meeting with Defendant Raleigh and Defendant Eggleston immediately before Defendant Eggleston started searching Plaintiffs individually, the factual allegations of Plaintiffs' Complaint do not plausibly suggest that race or ethnicity was a motivating factor in Defendant Simonds' actions. Plaintiffs failed to plead facts plausibly suggesting that Defendant Simonds treated students of other races or ethnicities differently than Plaintiffs. Accordingly, Plaintiffs fail to state a claim for an Equal Protection violation based solely on Defendant Simonds' actions on January 15, 2019.

With respect to Defendant Eggleston's comments about Plaintiffs' bodies and their attitudes, Plaintiffs argue that it is reasonable to infer racial stereotyping from Defendant

Eggleston's comments about Plaintiffs A.S. and I.M.'s bodies.  (*Id*. at ¶¶ 155-57.)  Plaintiffs state that it is a stereotype that "[b]lack girls [are seen] as older and more mature than white girls of [a] similar age."  (*Id*. at ¶ 157.)  However, Plaintiffs' allegations are conclusory at best because young girls of all races and ethnicities experience puberty at different ages based on a variety of factors including, but not limited to, genetics, physical activity, and hormone levels.  Although Defendant Eggleston's comments about Plaintiffs' bodies are clearly inappropriate and wrong, they do not amount to an Equal Protection violation.

Turning to Defendant Eggleston's comments about Plaintiffs' "attitudes," Plaintiffs argue that her comments were racially motivated.  (*Id*. at ¶¶ 144, 155.)  However, "verbal harassment alone does not amount to a constitutional deprivation."  *Ali v. Connick*, 136 F. Supp. 3d 270, 276 (E.D.N.Y. 2015).  Students of all races, and ages for that matter, can be considered loud, disrespectful, and having an attitude.  Plaintiffs have failed to plead facts plausibly suggesting that Defendant Eggleston's comments were racially motivated.  Without additional factual allegations, it is simply not reasonable to infer that Defendant Eggleston's comments about Plaintiffs' attitudes, even when viewed together with her comments about Plaintiffs' bodies, amounted to a violation of the Equal Protection Clause.  Therefore, Plaintiffs fail to state an Equal Protection claim with respect to Defendant Eggleston's comments.

The Court next analyses Defendant Raleigh's comments regarding her fear of being left alone with Plaintiffs, and that she "could not be in a room alone with [Plaintiffs]."  (Dkt. No. 1, at ¶ 50.)  Liberally construing all reasonable inferences in favor of the non-moving party, the Court finds that, at most, the comment could ambiguously suggest racist motivation.  *Compare*

*Kaur v. New York City Health and Hosp. Corp.*, 688 F. Supp.2d 317, 337-38 (S.D.N.Y. 2010) ("Another comment attributed to Ms. Bobcombe, to 'keep an eye on' Plaintiff because she cannot be trusted . . . is ambiguous and could be referring to Plaintiff's perceived problems completing assignments effectively.") *with Scott v. N. Manor Multicare Ctr., Inc.*, 15-CV-2495, 2018 WL 1627270, at *13 (S.D.N.Y. Mar. 30, 2018) ("Toms' affidavit contains merely one statement *suggestive* of racial bias: that she was told by one of the nurse managers to watch out for Plaintiff *because of her NAACP membership*.") (emphasis added).  The problem is that, even construing all inferences in favor of the plaintiff, no facts have been alleged (other than Plaintiff's conclusory allegation of racism) that plausibly suggest that the comment was racially motivated. In other words, the ambiguous suggestion of racism is not plausible given the number of reasonable possible motivations for the comment (e.g., the avoidance of any unfounded accusations against Defendant Raleigh, the avoidance of personal injury to Defendant Raleigh should a physical conflict arise due to the parity in height and/or weight between herself and Plaintiffs, etc.).  Accordingly, the Court finds that Plaintiffs have, at this time, failed to plead facts plausibly suggesting Defendant Raleigh's conduct was discriminatory in nature.

### b.    Municipal Liability

For the sake of brevity, the Court directs the reader to Part III.B.3. of this Decision and Order for an in-depth overview of the legal standards for municipal liability.  Because the Court has previously evaluated School Defendant's municipal liability with respect to Defendants Simonds and Defendant Eggleston, the Court focuses its analysis on Defendant Raleigh.

Here, Plaintiffs have failed to plead facts plausibly suggesting that Defendant Raleigh was a final policymaker under the circumstances of this case. Instead, Plaintiffs' attempt to combine Defendant Raleigh's authority with Defendant Simonds' authority to show that a final policymaker committed an Equal Protection violation. (Dkt. No. 1 at ‖ 145.) Contrary to Plaintiffs' position, the Court has not found Second Circuit caselaw or a New York State statute that identifies an Assistant Principal as a final policymaker of the school, particularly when the ultimate alleged harm was under the Principal's direct control. Furthermore, by relying entirely on the interpretation of School Defendants' Code of Conduct, Plaintiffs have failed to cite any authority to support their position that an Assistant Principal acts as a final policymaker when expressing a personal opinion. (*See generally* Dkt. No. 60.) Accordingly, the Court finds that it is not reasonable to infer that Defendant Raleigh was a final policymaker under the circumstances of this case.

The Court next turns to whether the School Defendants inaction was a result of a failure-to-train Defendant Raleigh. As discussed below in Part III.B.3.b. of this Decision and Order, Plaintiffs have failed to plead any facts plausibly suggesting that the School Defendants conduct amounted to deliberate indifference. Plaintiffs conclusorily allege that the School Defendants' failure to train and supervise school staff on the Fourth Amendment's proscription on unreasonable searches caused an Equal Protection violation. (Dkt. No. 1 at ‖ 145.) However, Plaintiffs have not shown how the School Defendants acted with a conscious disregard to Plaintiffs' Fourth Amendment rights with respect to Defendant Raleigh's actions. Therefore, the

Court finds that Plaintiffs' Equal Protection claim of *Monell* liability through a failure-to-train theory is denied.

The Court also finds that the above-described defects in Plaintiffs' Complaint are formal in nature, such that better pleading could cure them. For these reasons, the Court finds that Plaintiffs Equal Protection claims against Defendants are dismissed without prejudice.

For all of these reasons, the Court finds that Plaintiffs have failed to plead facts plausibly suggesting that Defendants committed an Equal Protection violation. Accordingly, Plaintiffs Equal Protection claims are dismissed without prejudice with respect to all Defendants.

### 2.    Plaintiffs' Title VI Claims

Title VI of the Civil Rights Act of 1964 states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To state a claim under Title VI, a plaintiff must allege, *inter alia*, (1) that the defendant discriminated against him on the basis of race, (2) that the discrimination was intentional, and (3) that discrimination was a substantial and motivating factor for the defendant's actions. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).[6]  "A plaintiff alleging racial or gender discrimination by a[n educational institution] must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must

---

[6]     Title VI and Title IX operate in the same manner, except that Title VI prohibits race discrimination in all programs receiving federal funds, whereas Title IX prohibits sex discrimination in education programs. *Gebser v. Logo Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1989).  Here, Plaintiffs allegations focus on their race and national origin; as a result, the Court focuses on Title VI.

specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 595 (S.D.N.Y. 2011) ("Second Circuit precedent requires that the allegations of racial animus be pled with particularity.") (collecting cases).  "Bald assertions and conclusions of law will not suffice."  *Rodriguez v. N.Y. Univ.*, 05-CV-7374, 2007 WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 [2d Cir. 1996]).

In this case, Plaintiffs argue that they have adequately pled Title VI violations because the same allegations that support Plaintiffs' Equal Protection claim support Plaintiffs' Title VI claim.  (Dkt. No. 60, at 24.)  As discussed above in Part III.C.1.a. of this Decision and Order, the Court disagrees.  Plaintiffs do not state that any individual Defendant referred to their race throughout Plaintiffs' Complaint.  Although Plaintiffs' has argued that their Complaint pled facts from which one could reasonably infer that Defendants acted with discriminatory intent or motivation with respect to Plaintiffs' race (Dkt. No. 1, at ¶ 50), the Court finds that Plaintiffs have conclusorily alleged Defendants' actions were racially motivated.  Accordingly, Plaintiffs have failed to plead facts plausibly suggesting that Defendants committed a Title VI violation.

The Court finds that the above-described defects in Plaintiffs' Complaint are formal in nature, such that better pleading could cure them.  For these reasons, the Court finds that Plaintiffs Title VI claims against Defendants Simonds, Eggleston, and the School Defendants are dismissed without prejudice.

For all of these reasons, Plaintiffs' Title VI claims are dismissed without prejudice with respect to each Defendant, with the exception of Plaintiffs' Title VI claims Defendant Raleigh, which survive.

**D.      Whether Plaintiffs' Claims Against the Individual Defendants Should Be Dismissed Because Plaintiffs' Official Capacity Claims Are Duplicative**

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 44-1 at 30; Dkt. No. 62 at 14.)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Defendants' reasoning.

"Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'"  *Dejean v. Cty. of Nassau*, 06-CV-6317, 2008 WL 111187, at *5 (E.D.N.Y. Jan. 8, 2008) (quoting *Escobar v. City of New York*, 05-CV-3030, 2007 WL 1827414, at *3 [E.D.N.Y. June 24, 2007]).  "[A]bsent a claim seeking injunctive relief to satisfy an *ongoing* violation of federal law, 'a [Section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself.'"  *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498 (N.D.N.Y. 2017) (Hurd, J.) (emphasis in original) (quoting *Lin v. Cty. of Monroe*, 66 F. Supp. 3d 341, 353 [W.D.N.Y. 2014]).

Here, Plaintiffs argue that their claims are not duplicative because they seek to enjoin Defendants from implementing policies and procedures to ensure that illegal and/or unconstitutional searches do not occur in schools within the District and require Defendants to

Case 3:19-cv-00513-GTS-ATB   Document 117   Filed 09/14/20   Page 46 of 48

end the policy or practice of assigning students to an alternative school without making a disciplinary referral.  (Dkt. No. 1 at 39.)  However, Plaintiffs have failed to plead facts plausibly suggesting that Plaintiffs are subject to an ongoing harm from Defendants.  Plaintiffs' allegations center on Defendants' alleged actions on January 15, 2019.  (Dkt. No. 60 at 20.)  As of February 11, 2019, Plaintiffs were transferred to West Middle School, where there is no opportunity for the individual Defendants to interact with Plaintiffs.  (Dkt. No. 1 at ¶ 82.)  By conclusorily alleging that Plaintiffs face an ongoing harm of being subject to unconstitutional searches, they ignore the fluidity of the Fourth Amendment and the discretion courts have afforded to school officials.  The Court also notes that, according to Plaintiffs' own opposition memorandum of law, Defendants have already implemented policies and procedures to guide school officials who undertake searches of students.  (Dkt. No. 60 at 18 n.2.)

Moreover, as discussed above in Part III.A. of this Decision and Order, Plaintiffs have failed to state a claim for violations under the IDEA and Rehabilitation Act.  In the absence of a viable ongoing harm, there is no actionable claim for injunctive relief against the individual Defendants.  *Coppola v. Town of Plattekill*, 17-CV-1032, 2018 WL 1441306, at *11 (N.D.N.Y. Mar. 22, 2018) (Kahn, J.).  Accordingly, to the extent Plaintiffs sue Defendants Simonds, Raleigh, and Eggleston in their official capacity, Plaintiffs' claims are equivalent to a claim against the School Defendants and therefore are subject to dismissal.

Furthermore, the Court finds that the above-described defects in Plaintiffs' Complaint are substantive in nature, such that better pleading would not cure them.  For these reasons, Plaintiffs

official capacity claims against Defendants Simonds, Raleigh, and Eggleston are duplicative of Plaintiffs' claims against the School Defendants and are dismissed with prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 44-1) is **DENIED**; and it is further

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 44-1) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiffs A.S. and I.S.'s Fourth Amendment claims based on a strip search (Dkt. No. 1) are **DISMISSED** as to all Defendants; and it is further

**ORDERED** that Plaintiffs' remaining Fourth Amendment Claims (Dkt. No. 1) **SURVIVE** as to all Defendants; and it is further

**ORDERED** that Plaintiffs' Equal Protection claims against the School Defendants, Defendant Simonds, Defendant Raleigh, and Defendant Eggleston (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' Title VI claims against the School Defendants, Defendant Simonds, Defendant Raleigh, and Defendant Eggleston are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' official capacity claims against Defendant Simonds, Defendant Raleigh, and Defendant Eggleston are **DISMISSED**; and it is further

**ORDERED** that the dismissals of Plaintiffs' IDEA and Rehabilitation Act claims are **with prejudice**, the dismissals of Plaintiffs' official capacity claims are dismissed **with prejudice**, and the dismissals of Plaintiffs' Equal Protection and Title VI claims are **without**

**prejudice**.

Dated: September 14, 2020
          Syracuse, New York

_____
Glenn T. Suddaby
Chief U.S. District Judge